IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WYESHA WATTS, individually, and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 1:17-cv-07713 ) |
| AURORA CHICAGO LAKESHORE HOSPITAL, LLC, d/b/a CHICAGO LAKESHORE HOSPITAL; SIGNATURE HEALTHCARE SERVICES, LLC; KRONOS, INC., | ) Judge Andrea R. Wood ) Mag. Judge Sidney I. Schenkier ) ) ) |
| Defendants. | ) ) ) ) |

**DEFENDANTS AURORA CHICAGO LAKESHORE HOSPTIAL, LLC & SIGNATURE HEALTHCARE SERVICES, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT**

**I.     INTRODUCTION**

Defendants Aurora Chicago Lakeshore Hospital, LLC and Signature Healthcare Services, LLC (collectively "Defendants") have never disputed this Court's jurisdiction. Since the time that this case was properly removed from state court pursuant to the Class Action Fairness Act ("CAFA"), Defendants' primary argument in it's 12(b)(6) Motion to Dismiss has been – and remains – that Plaintiff is not "aggrieved" within the meaning of the Illinois Biometric Information Privacy Act ("BIPA). 740 ILCS 14/1, *et seq*.; *see* (Docket 17-22); *see also* Defendants Reply to Plaintiff's to Plaintiff's Opposition to Defendants' Motions to Dismiss And Strike, filed concurrently herewith and incorporated herein by reference to avoid duplication.

Plaintiff's inability to state a claim under BIPA, commonly referred to as "statutory standing" is not a jurisdictional question, but a matter of statutory interpretation. Article III standing is a separate and distinct legal issue that Defendants have never raised. Plaintiff has *grossly* misrepresented Defendants' position in this regard by conflating statutory standing and Article III standing, distorting Defendants' legal arguments, and using questionable legal authorities and misleading citations to support her position. This is especially true considering that Plaintiff is the only party to reverse her position with regard to Article III standing, originally pleading its existence and subsequently "declining" to take a position. Accordingly, Defendants respectfully requests that this Court deny Plaintiff's motion to remand and request for attorneys' fees, in its entirety, and award Defendants the attorney's fees and costs incurred in opposing her unreasonable and vexatious motion to remand pursuant to 28 U.S.C § 1927.

## II.  ARGUMENT

### A.  Removal under CAFA Was Proper

A defendant may remove a state court putative class action pursuant to the Class Action Fairness Act ("CAFA") by filing a notice of removal within 30 days of receiving the initial pleading setting forth the basis for removal. 28 U.S.C. §§ 1332(d), 1446(b) and 1453(b). Defendants filed their notice of removal within the statutory time period and with the consent of Defendant Kronos. *See* Docket No. 1. CAFA provides the federal district courts with *original jurisdiction* to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (emphasis added). Defendants established each of these requirements for original jurisdiction before this Court. *See* Docket No.

1. There is no requirement that a Defendant also establish Article III standing, and Plaintiff has cited no authority to the contrary.

### B. Plaintiff's Article III Standing Argument Only Serves to Mislead and Distract the Court from Plaintiff's Lack of Statutory Standing

Plaintiff's claim that Defendants "abandoned their burden of proof and affirmatively disclaimed federal jurisdiction in their Motion to Dismiss by claiming that Plaintiff has not alleged an injury in fact" is simply untrue and should be disregarded for the following reasons: **(1)** Article III standing (i.e., a sufficient allegation of "injury in fact") is separate and distinct from statutory standing (i.e., whether Plaintiff is "aggrieved" within the meaning of BIPA); and **(2)** Plaintiff alleged that she is injured within the meaning of Article III. Simply put, Defendants demonstrated federal jurisdiction when this matter was removed, Plaintiff herself plead she was "injured" within the context of Article III standing, and now Plaintiff has reversed her position in a thinly veiled attempt to evade an unfavorable decision on the merits and shop for what she perceives to be a more favorable forum.

#### 1. Article III Standing is Separate and Distinct from "Statutory Standing"

Defendants have never questioned this Court's jurisdiction. (See Docket 17-22). Instead, Defendants Rule 12(b)(6) Motion to Dismiss was predicated, in part, on the fact that Plaintiff cannot demonstrate that she has a cause of action under the statutory language of BIPA, i.e., that Plaintiff cannot show statutory standing. *Id.* Article III standing and statutory standing are distinct legal principles, analyzed under separate bodies of law, to account for separate procedural requirements.

Article III standing enforces the Constitution's case-or-controversy requirement. *George v. Kraft Foods Glob., Inc.,* 270 F.R.D. 355, 364 (N.D. Ill. 2010) (citing *Winkler v. Gates*, 481

F.3d 977, 979 (7th Cir. 2007)).[1] Instead of addressing the jurisdiction of the federal courts, statutory standing is "simply a matter of statutory interpretation." *Id.* (citing *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 296 (3d Cir. 2007)). "In determining whether a plaintiff has statutory standing, a court considers whether [the legislature], via a statutory provision, has accorded this injured plaintiff the right to sue the defendant to redress his injury." *Id.* (internal citations omitted). The concepts of Article III standing and statutory standing "*are distinct, and should be treated as such.*" *Id.* (emphasis added).

Similarly, in *Vigil v. Take-Two Interactive Software, Inc.*, one of only a few published decisions addressing BIPA, the district court noted that "what has been called 'statutory standing' in fact is *not a standing issue*, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *See Vigil v. Take-Two Interactive Software, Inc.,* 235 F.Supp.3d 499, 507 n. 5 (S.D.N.Y. 2017) (emphasis added) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.* 821 F.3d 352, 359 (2d Cir. 2016)). Clearly, Defendants did not challenge this Court's jurisdiction under Article III by challenging Plaintiff's statutory standing.

### 2. Plaintiff's Alleges That She Is "Injured" Within the Meaning of Article III

In her motion to remand, Plaintiff acknowledged that there is a "lack of uniformity in jurisprudence regarding Article III standing and BIPA." (Docket 38, Pg. 5). As such, Plaintiff, unlike plaintiffs in previous BIPA cases, alleged that she suffers from a variety of injuries stemming from Defendants alleged BIPA violations, including: emotional distress, invasion of privacy, and information injury. (Compl. ¶¶ 45-48 [attached hereto as Exhibit A]). Although it

---

[1] "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co.* v. *Geertson Seed Farms*, 561 U.S. 139, 149 (2009)). Plaintiff has asserted such an injury in her Complaint.

is clear that Plaintiff's allegations are *insufficient* to render Plaintiff "aggrieved" within the meaning of BIPA (*see* Docket 17-22; *see also* Section II.B, *infra*), it is admittedly unclear whether they are sufficient to render her actually "injured" within the context of Article III standing.

What is clear, however, is that Plaintiff is taking inconsistent positions as to whether she is injured in the context of Article III standing. Plaintiff alleges "injuries"[2] throughout her Complaint. (*See, e.g.,* Compl. at ¶ 46 ("Watts also suffered an informational injury…"); ¶ 47 ("By depriving Watts of this information, [Defendant] injured Watts…"); ¶ 48 ("Watts has experienced personal injury…"). Plaintiff even went so far as to provide case law to support the notion that she was injured within the context of Article III.

Specifically, in paragraph 47 of Plaintiff's Complaint she alleges that "[b]y depriving [her] of [] information, Chicago Lakeshore Hospital injured Watts and the putative Class she seeks to represent. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998)." (Compl. (citations in original)). In *Public Citizen*, the plaintiff specifically requested, and had been refused, information regarding judicial nominees. 491 U.S. at 449. The plaintiff filed suit under the Federal Advisory Committee Act ("FACA"), in an attempt to compel disclosure as required by FACA. *Id.* The Supreme Court's decision grappled with the question of whether the plaintiff's inability to scrutinize the withheld information to the extent FACA allowed was an injury in fact *for the purposes of Article III standing*. *Id.*

Similarly, the plaintiffs in *Akins*, after a failed request for information, filed suit to compel the defendant to provide information that was required to be disclosed under the Federal

---

[2] The Court should not the significance of the term "injury," as it is specific to Article III standing and completely absent from BIPA's statutory language.

Election Campaign Act of 1971 ("FECA"). 524 U.S. at 19-20. In that case, the Supreme Court also analyzed whether the plaintiffs' inability to procure information under FECA qualified as a concrete injury *for the purposes of Article III standing*. *Id.* While Plaintiff's situation is distinct from the situations in *Public Citizen* and *Akins*, as addressed in Defendants' Memorandum of Law filed in support of their Rule 12(b)(6) motion to dismiss (*See* Docket 18), it does not change the fact that Plaintiff clearly alleged she suffered an informational injury in the context of Article III.

When this case was filed, Plaintiff clearly believed she was injured within the context of Article III standing. Now, Plaintiff's position on Article III standing is conveniently ambiguous in that "she declines to take a position on whether she would meet the standing requirements of Article III." (*See* Docket 37, Pg. 8). Plaintiff is trying to have her cake and eat it too. She cannot simultaneously take the position that this Court must determine, *sua sponte*, that she lacks an injury within the context of Article III standing while pleading such an injury and arguing that she satisfies the higher threshold of statutory standing under BIPA.

**C. Defendants Should Be Awarded Fees and Costs Incurred As A Result of Plaintiff Unreasonable and Vexatious Motion to Remand**

Not only should this Court deny Plaintiff's request for fees and costs, it should award Defendants the fees and costs incurred for having to oppose her unreasonable and vexatious motion to remand. To start, Plaintiff's request for attorney's fees and costs is predicated on the claim that "Defendants knew, or should have known…that their jurisdictional about-face was untenable[.]" (Plaintiff's Motion to Remand, Docket 39, Pg. 5). As laid out above, Defendants have never faltered in their position with regard to this Court's jurisdiction, which is clearly conferred by CAFA and pursuant to the claims made by Plaintiff herself.

In contrast, it is Plaintiff who is conflating issues, refusing to take a position (despite the allegations she has already made) and misrepresenting Defendants' arguments in an attempt to confuse the Court. In addition to the examples laid out hereinabove and in Defendant's Reply, filed concurrently herewith, Plaintiff's misrepresentation of the *Mocek* and *Barnes* cases serve to illustrate Plaintiff's actions. In *Mocek*, the "[d]efendant removed the case under 28 U.S.C. § 1441, asserting federal subject matter and diversity jurisdiction. One month later, without alleging any change in circumstances bearing on jurisdiction, defendant moved to dismiss the case for lack of federal jurisdiction" via a Rule 12(b)(1) motion. *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 911-13 (N.D. Ill. 2016). That is not the case here, where Defendants filed a 12(b)(6) motion – not 12(b)(1) – and have never challenged federal jurisdiction in an attempt to obtain an improper dismissal of the case on the merits. *Id.* at 913-15.[3]

Likewise, in *Barnes*, the Defendant raised an Article III "standing argument in a Rule 12(b)(1) motion to dismiss for lack of jurisdiction after having removed the case to federal court based on the representation that the federal court *had* subject matter jurisdiction over the case[.]" *Barnes v. Arytza, LLC*, Case No. 17-cv-07358, Dkt. No. 39, at 4 (attached hereto as Exhibit B). Again, this is not remotely analogous to the facts in this matter. Here, Defendants never challenged the Court's jurisdiction and did not file a 12(b)(1) motion to dismiss. These examples illustrate Plaintiff's proclivity to play fast and loose with the facts in this case and their application to existing case law. Upon closer inspection, however, there is no question that Plaintiff's position is meritless.

---

[3] In *Mocek*, the Court clearly indicated that Defendant "was free to remove the case and seek to establish federal jurisdiction, regardless of whether [the Court] may ultimately have concluded that plaintiff lacked standing under [Article III]." *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 914, (N.D. Ill. 2016). The defendant in *Mocek* did not pursue that avenue. Instead, the "defendant tried to have it both ways by asserting, then immediately disavowing, federal jurisdiction, apparently in hopes of achieving outright dismissal, with prejudice, rather than the remand required by § 1447(c)." *Id.*

Plaintiff was unreasonable and vexatious in bringing this motion to remand. She asserted Article III standing in her pleadings. (Compl. ¶¶ 45-48). Subsequently, she reversed her position in an attempt to avoid an unfavorable decision on the merits *and* brought a motion to remand based on her legal about-face. This is exactly the type of conduct that is sanctionable under 28 U.S.C. § 1927 ("Any attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."); *see also Knepper v. Skekloff*, 154 B.R. 75, 78 (N.D. Ind. 1993) ("When an attorney pursues a course of conduct which…is taken with reckless indifference for the law, § 1927 permits the court to impose on such an attorney the costs the adverse party incurs as a result of such behavior.). *See also Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177, 182 (7th Cir. 1985) (where the Seventh Circuit held that § 1927 sanctions may he assessed when attorneys "intentionally file or prosecute a claim that lacks a plausible legal or factual basis.").

Plaintiff's conduct is reminiscent of conduct the Seventh Circuit determined to be sanctionable in *Boyer v. BNSF Ry. Co.*, 824 F.3d 694 (7th Cir. 2016). In that case, plaintiffs' counsel forum shopped in an effort to further a separate interpretation of a state law statute that had previously prevented his clients from stating claims in the Western District of Wisconsin. *Id.* at 699-701. Although significantly more egregious than Plaintiff's conduct in the instant case, it is similar in that the Seventh Circuit determined that the conduct was sanctionable under § 1927 because it unnecessarily multiplied the proceedings. The Seventh Circuit stated, in language applicable here, that it disapproved of "the habit of the plaintiffs' attorneys from perpetually altering their line of argument as the moment suits them." *Id.* at 709, 712. Accordingly, Defendants request that the Plaintiff be ordered to pay the fees and costs associated

with this opposition to her motion to remand either under § 1927 or the inherent powers of this Court.

### III. CONCLUSION

Plaintiff's attempt to insert Article III standing into Defendants' Rule 12(b)(6) motion to dismiss is a last-ditch attempt to avoid an unfavorable decision on the merits. Accordingly, Defendants respectfully request that the Court deny Plaintiff's motion to remand, in its entirety, and rule on the merits of their Rule 12(b)(6) motion to dismiss or, in the alternative, grant their rule 12(f) motion to strike. Additionally, Defendants request that this Court grant their request for fees and costs pursuant to 28 U.S.C. § 1927 or the inherent power of this Court and such other relief as is just and proper.

Dated: January 29, 2018

Respectfully submitted,

AURORA CHICAGO LAKESHORE HOSPITAL, LLC, SIGNATURE HEALTHCARE SERVICES, LLC

By: /s/ *Mary A. Smigielski*
Mary A. Smigielski
Jeffrey S. Ranen, appearing *pro hac vice*
William C. Sung, appearing *pro hac vice*
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 West Adams Street, Suite 300
Chicago, Illinois 60661
T: 312.345.1718
Mary.Smigielski@lewisbrisbois.com
Jeffrey.Ranen@lewisbrisbois.com
William.Sung@lewisbrisbois.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing **DEFENDANTS AURORA CHICAGO LAKESHORE HOSPTIAL, LLC & SIGNATURE HEALTHCARE SERVICES, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT** was filed with the Clerk of the Court on January 29, 2018 using the CM/ECF system that will send notification of the filing to all parties of record.

By:    */s/ Mary A. Smigielski*